IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHAEL SMITH, | * |
| Plaintiff, | * |
| | * CIVIL ACTION NO. |
| v. | * |
| C.R. BARD, INC. | * |
| | * **JURY TRIAL DEMANDED** |
| Defendant. | * |

## COMPLAINT

Plaintiff Michael Smith ("Mr. Smith") brings the within complaint against the above-named Defendant, showing that Defendant C.R. Bard, Inc. ("Bard") has engaged in retaliatory acts on the following grounds:

## JURISDICTION AND VENUE

1.

This action is brought pursuant to Section 3730(h) of the qui tam provisions of the False Claims Act (the "FCA"), 31 U.S.C. § 3729-3733, which prohibits retaliation against any employee engaged in the protected activity of investigating possible fraud against the United States government, The Tennessee Public Protection Act (the "Act"), Tenn. Code Ann. § 50-1-

304 et. seq., which provides that provides that "no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities," and Tennessee common law prohibiting retaliatory discharge.

2.

Plaintiff's claim under the FCA presents a federal question, and the jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because of complete diversity in citizenship among the parties and because more than $75,000 is in controversy. This Court has supplemental jurisdiction of plaintiff's state law claims under 28 U.S.C. §1367 because these claims are so related to plaintiff's claims under the FCA that they form part of the same case or controversy.

3.

All parties to this action reside in or are located within the boundaries of this judicial district, and venue is appropriate under 28 U.S.C. § 1391(b). Moreover, the unlawful employment practices alleged below were committed, at least in part, in the Middle District of Tennessee.

## PARTIES

4.

Mr. Smith was employed by Bard as a sales representative of Bard for approximately seven and a half (7.5) years, and during that time was one of their most successful sales representatives. Specifically, Mr. Smith was awarded performance based stock or stock options in 2003, 2004, 2006 and 2007. He received the "President's Club" award and "Top Performer" awards several times and was part of the "Division of the Year" in 2006.

5.

Defendant Bard is and was at all times relevant hereto a corporation with offices located in this judicial district and doing substantial business in this judicial district.

6.

Bard is a Fortune 500 Company with over 10,000 employees based in New Jersey, and upon information and belief, incorporated in Delaware, with its principal place of business in New Jersey. Bard describes itself as an international developer, manufacturer, and marketer of medical technologies in the fields of Vascular, Urology, Oncology, and Surgical Specialty products.

Bard markets its products and services worldwide to hospitals, individual health care professionals, extended care facilities, and alternate site facilities.

## FACTUAL ALLEGATIONS

7.

Bard developed and sold a product called Tegress, which is an Ethylene Vinyl Alcohol copolymer that was approved by the FDA in 2004 for the treatment of stress urinary incontinence and only for use in women. However, Bard became aware of significant adverse effects of the product when used, as approved, in women.

8.

However, despite knowledge of these problems, beginning in at least 2006, Bard instructed its sales representatives to sell and market Tegress for the treatment of **male** stress urinary incontinence. This was called an "off-label" use. Bard never requested nor received FDA approval to market Tegress to men. The President of Bard's urological division, Mark Downey, and Bard Regional Manager Gary Lickovitch were vocal proponents of marketing this "off- label" use.

9.

Afterwards, Bard became aware of significant adverse effects of the use of Tegress in men. In 2007, Bard instructed its sales representatives to destroy its marketing material with regard to Tegress. However, some "off-label" marketing/sales of Tegress continued throughout most of 2007 and sales associates were instructed to offer "bulk sales" of Tegress.

10.

In January 2008, Mr. Smith attended an FDA ethics presentation relating to the marketing of medical devices for "off-label" use. This presentation, along with other factors, gave him a reasonable, good faith belief that Bard's off label sales and marketing of the Tegress product endangered public health and/or that Bard's and participation in and promotion of the false and/or erroneous billing the federal and state governments with the Tegress product violated statutory and regulatory provisions and/or that the company may have, at a minimum, violated FDA rules with regard to its marketing and sales of Tegress.

11.

On January 31, 2008, Mr. Smith took his concerns to Mr. Lickovitch. Mr. Lickovitch reacted angrily and aggressively, and threatened to "run [Mr.

- 5 -

Smith's] ass out of the company" if Mr. Smith did not "shut the fuck up." Bard engaged in a pattern and practice of threatening or harassing sales representatives that questioned Bard's sales practices with regard to Tegress.

12.

Immediately after that discussion, Bard treated Mr. Smith differently in an effort to make him so miserable as to quit and/or to create a false "paper trail" to build a pretext for retaliatory termination. Specifically, the company engaged in new behaviors towards Mr. Smith that it had never engaged in before, such as highly scrutinizing Mr. Smith's expense reports, questioned the authenticity of doctor's signatures on sales orders, scrutinized and questioned Mr. Smith's voicemail greeting, directed him to submit weekly call reports, and publicly ridiculed him and publicly stated that he was "a cancer" and "will soon be out of Bard."

13.

Mr. Smith retained counsel to investigate and/or initiate a false claims act claim. In March 2008, Mr. Smith advised Bard in writing that he was investigating and/or initiating a False Claims Act claim based upon Bard's

"off-label" sale of Tegress. Bard responded by continuing their disparate treatment of Mr. Smith in the conditions of his work.

14.

On April 9, 2008, Mr. Smith was terminated by Bard.

15.

The circumstances of Mr. Smith's termination were pretextual. After Mr. Smith had a verbal discussion with his supervisor in which Mr. Smith asked again that the company address his safety concerns and the threats made by Mr. Lickovitch, Bard wrote Mr. Smith and told him that it would accept his resignation. When Mr. Smith emailed back that he was not resigning from the company and had no intention of resigning, the company informed him that it would not accept his attempts to "rescind his resignation" and that he could not return to the company.

## COUNT I – RETALIATION, FALSE CLAIMS ACT

16.

Mr. Smith incorporates the facts asserted in the preceding paragraphs of this complaint as if alleged fully herein.

17.

Mr. Smith engaged in protected activity in furtherance of a false claims action.

18.

Bard was aware of Mr. Smith's stated intention to investigate and/or initiate what Mr. Smith believed to be a False Claims Act claim.

19.

Mr. Smith was discharged, harrassed and otherwise discriminated against as a result of his protected activity.

20.

Pursuant to 31 U.S.C. § 3729-3730 and Tenn. Code Ann. § 4-18-105, Mr. Smith may recover damages for this termination.

21.

As a result of defendant's unlawful actions, plaintiff has suffered a loss of employment opportunities and earnings and a loss of future earnings and earning capacity, and plaintiff has suffered, and continues to suffer, non-monetary damages, including, but not limited to, emotional and physical distress, humiliation, embarrassment, loss of esteem, and loss of enjoyment of life.

## COUNT II – THE TENNESSEE PUBLIC PROTECTION ACT

22.

Mr. Smith incorporates the facts asserted in the preceding paragraphs of this complaint as if alleged fully herein.

23.

Mr. Smith was discharged or terminated solely for refusing to remain silent about Bard's illegal activities.

24.

Pursuant to Tenn. Code Ann. § 50-1-304, Mr. Smith may recover damages for this termination.

25.

As a result of defendant's unlawful actions, plaintiff has suffered a loss of employment opportunities and earnings and a loss of future earnings and earning capacity, and plaintiff has suffered, and continues to suffer, non-monetary damages, including, but not limited to, emotional and physical distress, humiliation, embarrassment, loss of esteem, and loss of enjoyment of life.

# COUNT III – WRONGFUL TERMINATION UNDER COMMON LAW

26.

Mr. Smith incorporates the facts asserted in the preceding paragraphs of this complaint as if alleged fully herein.

27.

Mr. Smith attempted to exercise a statutory or constitutional right and/or Bard's termination violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision.

28.

For example, Bard's off label sales and marketing of the Tegress product endangered public health.

29.

For further example, Bard's and participation in and promotion of the false and/or erroneous billing the federal and state governments with the Tegress product violated statutory and regulatory provisions.

30.

By terminating Mr. Smith for opposing or seeking to expose these activities, Bard violated Tennessee common law.

31.

As a result of defendant's unlawful actions, plaintiff has suffered a loss of employment opportunities and earnings and a loss of future earnings and earning capacity, and plaintiff has suffered, and continues to suffer, non-monetary damages, including, but not limited to, emotional and physical distress, humiliation, embarrassment, loss of esteem, and loss of enjoyment of life.

32.

Bard's conduct was intentional, fraudulent, malicious, and/or reckless.

**Prayer for Relief**

Wherefore, Plaintiff requests the following relief:

1) That this Court adjudge defendant to have engaged in unlawful employment practices;

2) that this Court enjoin Defendant from engaging in unlawful employment practices in violation of Tennessee and Federal law;

3) that this Court award Plaintiff appropriate back pay with prejudgment interest, and front pay in lieu of reinstatement and other special damages;

4) that this Court compensate Plaintiff for lost benefits, including but not limited to use of company car (with insurance), gasoline for same, health care, pension benefits, and stock options that were granted him but not able to vest due to the retaliatory termination;

5) that this Court award Plaintiff general damages to compensate him for the mental and emotional distress occasioned by Defendant's misconduct;

6) that this Court award Plaintiff punitive damages to deter and punish the defendant;

7) that this Court assess all costs against Defendant, including Plaintiffs' reasonable attorney's fees pursuant to Tenn. Code. Ann. § 4-18-105(c), § 50-1-304(d)(2), and 31 U.S.C. § 3730(h).

8) that this Court grant a trial by jury; and

9) that this Court grant such other and further relief as the court deems just and proper.

PLAINTIFF DEMANDS JURY TO TRY THIS CASE.

Respectfully submitted this 10th day of February, 2009.

*/s/ Wade B. Cowan*
Wade B. Cowan (S.C. #9403)
Suite 225
150 Second Avenue North
Nashville, Tennessee 37201
(615) 256-8125
(615) 242-7853 (fax)
wcowan@dhhrplc.com

Douglas R. Kertscher, Esq.
Blake H. Frye, Esq.
Pro Hac Vice Pending
HILL, KERTSCHER & PIXLEY LLP
3350 Riverwood Parkway
Suite 800
Atlanta, Georgia 30339
770-953-0995
770-953-1358 Fax

Attorneys for Plaintiff